IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NANCY MAZAN | * |
| | * |
| v. | *   Civil Case No. CCB-13-1831 |
| | * |
| COMMISSIONER, SOCIAL SECURITY | * |
| | * |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix).  I have considered the parties' cross-motions for summary judgment.  ECF Nos. 18, 22.  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011).  For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Mazan's motion be denied.

Ms. Mazan applied for Disability Insurance Benefits and Supplemental Security Income on April 8, 2009, alleging a disability onset date of April 1, 2008.  (Tr. 146-53).  She later amended her onset date to the date of filing.  (Tr. 165).  Her claims were denied initially on August 25, 2009, and on reconsideration on July 9, 2010.  (Tr. 86-89, 91-92).  An Administrative Law Judge ("ALJ") held a hearing on August 5, 2011, (Tr. 27-83), and subsequently denied benefits to Ms. Mazan in a written opinion, (Tr. 9-26).   The Appeals Council declined review, (Tr. 1-5), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Mazan suffered from the severe impairments of "degenerative disc disease of the lumbar spine status post-fusion L4-S1 in March 2008, obesity (5'1", 170

pounds, BMI 32), arthritis in the right knee from January 2010, learning disorder, and depression." (Tr. 11). However, the ALJ determined that Ms. Mazan retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant can occasionally use foot controls; can occasionally climb ramps or stairs (never ladders, ropes or scaffolds), balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to workplace hazards; can carry out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks); and can adapt to simple changes in a routine work setting.

(Tr. 14). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Mazan could perform work existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 19-20).

Ms. Mazan disagrees. She asserts several arguments in support of her appeal: (1) that the ALJ provided an inadequate mental RFC assessment; (2) that the ALJ erred in evaluating Listing 12.05C; (3) that the ALJ assigned insufficient weight to the opinions of four treating sources; (4) that the ALJ should have found her arthritic changes in her cervical spine to be severe; and (5) that the ALJ's hypothetical question to the VE was inadequate. Each argument lacks merit.

Ms. Mazan's first argument relates to the adequacy of the mental RFC assessment determined by the ALJ. Pl. Mot. 22-24. Ms. Mazan asserts that the mental RFC assessment lacked sufficient detail about particular functions. In making that argument, however, Ms. Mazan focuses exclusively on the bolded language of the RFC assessment set forth in the opinion heading. Pl. Mot. 22. In fact, the ALJ's analysis considered Ms. Mazan's activities of daily living, social functioning, concentration persistence, or pace, prior ability to work a job, educational records, and psychiatric records and evaluations. (Tr. 12-19). In light of the evidence considered by the ALJ regarding Ms. Mazan's functional capacities, remand is unwarranted. Ms. Mazan further contends that the ALJ failed to evaluate Dr. Ansel's

psychological evaluation. Pl. Mot. 24. While the ALJ's detailed discussion of Dr. Ansel's psychological evaluation occurred in the Step Three section of the ALJ's opinion, rather than the Step Four section, there is no requirement that the same analysis be reiterated repeatedly within a single opinion. It is clear that the ALJ adequately considered Dr. Ansel's opinion in reaching a conclusion about Ms. Mazan's RFC.

Ms. Mazan's next argument is that she should have been found to meet the criteria of Listing 12.05C. Pl. Mot. 24-25. Listing 12.05 governs intellectual disability, which refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Sub-section C requires a showing of two distinct prongs. First, the claimant must demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Second, the claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* In testing with Dr. Ansel, Ms. Mazan was assigned a verbal and full scale IQ of 70. (Tr. 385-87). However, the ALJ assigned little weight to Dr. Ansel's IQ score and opinion, noting that Dr. Ansel had been erroneously informed that Ms. Mazan had special education in school, when in fact she was in a regular education program, that Ms. Mazan provided contradictory information regarding whether she or her daughter completed her function report and work report, that Ms. Mazan successfully worked part-time for many years, that Ms. Mazan effectively used public transportation to travel through the community, and that Dr. Ansel failed to provide an explanation or analysis for his conclusions. (Tr. 14). An ALJ "has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). The ALJ is permitted to rely on the inconsistencies between the

IQ result and the claimant's actual functioning. *Id.* Because the ALJ did just that, the ALJ did not err in failing to credit Dr. Ansel's score, which could trigger application of Listing 12.05.[1]

Even if this Court were to find that the ALJ's rejection of Ms. Mazan's IQ score did not rest on substantial evidence, remand would be inappropriate because Ms. Mazan also fails to demonstrate the deficits in adaptive functioning required by the introductory paragraph of Listing 12.05. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002)). As has already been established, Ms. Mazan has few deficits in adaptive functioning, as she navigates public transportation independently and assists in caring for a daughter on disability. In addition, the ALJ reasoned that Ms. Mazan has successfully performed part-time work in the past, and that she was never enrolled in any special education classes. (Tr. 14); *see also* (Tr. 218-26) (Ms. Mazan's academic records indicating poor grades, but no special education classes). Accordingly, Ms. Mazan does not meet the criteria of Listing 12.05.

Next, Ms. Mazan argues that the ALJ erred by assigning too little weight to the opinions of four treating sources. Pl. Mot. 26-28. A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608

---

[1] Moreover, because the records show that Ms. Mazan participated in a regular education curriculum in school, the conclusions of physicians that she suffered "mild mental retardation" do not alone establish that any deficits in adaptive functioning manifested during the developmental period. Dr. Ansel makes the conclusory allegation that, "In the opinion of this examiner, [the borderline intellectual functioning] has been the case since the developmental period." (Tr. 387). However, he provides no explanation for the conclusion.

(W.D.N.C. 2001)).  From the outset, it should be stated that this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Here, the ALJ's decision meets that standard.

The ALJ provided the appropriate analysis with respect to each physician's opinion.  The first cited physician, Dr. Park, opined that Ms. Mazan has disabling low back pain and cervical spondylosis.  (Tr. 340-42, 389-91).  However, as the ALJ noted, the MRI ordered by Dr. Park showed only moderate degenerative changes.  (Tr. 16, 348).  Dr. Park recommended only conservative treatment, and Ms. Mazan described her pain as only "4 out of 10" or "5 out of 10" at two of her four physical therapy sessions.  (Tr. 18); (Tr. 279) (physical therapy note reporting pain level of "5"); (Tr. 281) (physical therapy note reporting pain level of "4"); (Tr. 250) (Dr. Park note stating that MRI "looks reasonably good" and "I think we can continue to treat her conservatively"); (Tr. 343) (Dr. Park note reiterating that "MRI of the lumbar spine . . . looks reasonably good . . . I think the patient will benefit from physical therapy."); (Tr. 388) (Dr. Park treatment note from same date as 2011 opinion noting "an MRI that did not show any abnormality or no acute changes in the past . . . I think the patient needs to continue to be treated conservatively.)  Because Dr. Park's opinions suggesting a complete inability to work stand in contrast to his examination notes and his conservative treatment, the ALJ appropriately assigned the opinions "little weight."

Similarly, Ms. Mazan's treating physician, Dr. Folkemer, opined on August 12, 2010 that Ms. Mazan would need to lie down 4-6 hours during a regular 8 hour workday and would miss 60 days of work per year.  (Tr. 337-39).  Dr. Folkemer filled out two earlier forms regarding Ms. Mazan's physical condition.  In the form filled out in January, 2010, Dr. Folkemer did not even list "back pain" as one of the diagnoses.  (Tr. 289-90).  Three months later, Dr. Folkemer

completed the same form and included "chronic back pain" in the diagnoses rendered. (Tr. 294). In a separate mental health form completed in January, 2010, Dr. Folkemer noted that "arthritis may limit any heavy physical work." (Tr. 292). He provided no explanation for the extreme shift in his position, over only an eight month window, from finding a mere inability to perform heavy physical work to a need to lie down for half or most of a workday. As the ALJ noted, Dr. Folkemer's opinion is not supported "with treatment records or other objective evidence to show such limitations." (Tr. 18). In fact, there are no treatment records from Dr. Folkemer in the record, other than the various opinions references above. *See generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Accordingly, the assignment of "little weight" was supported by substantial evidence.

Ms. Mazan also contests the assignment of weight to the opinions of Dr. Muneer, who opined that her back pain met the criteria of Listing 1.04 and would render her unable to work. (Tr. 368-72). The ALJ provided a persuasive justification for rejecting Dr. Muneer's Listing opinion, since Dr. Muneer provided no evidence of the compromise of a nerve root or spinal cord as needed to establish the criteria of the Listing. (Tr. 12). Moreover, Dr. Muneer provided almost no explanation for the conclusions that Ms. Mazan would be unable to sit for six hours, stand for two hours, or lift objects weighing up to ten pounds, other than the conclusory statement that, "Pt has chronic low back pain + bil. shoulder pain." (Tr. 371-72). In assigning "little weight" to Dr. Muneer's opinion, the ALJ reasoned that the record evidence did not support the limitations asserted by Dr. Muneer. (Tr. 19). I agree, given that the treatment notes from Dr. Park and Ms. Mazan's own descriptions of her activities of daily living suggest a greater functional capacity than that found by Dr. Muneer.

Finally, Ms. Mazan contests the assignment of weight to the opinion of Dr. Baum, who treated her reflux disease. Pl. Mot. 27-28. Dr. Baum treated Ms. Mazan for less than two months before rendering the opinion, and did not opine on capacity to work other than noting that lifting heavy objects increases reflux disease and that Ms. Mazan would likely miss thirty or more days of work per year. (Tr. 381-84). The ALJ assigned the opinion little weight, noting that the reflux disease has been treated conservatively with Zantac and was therefore non-severe. (Tr. 12, 19). In fact, Dr. Baum's own opinion notes that the medication was increased to twice per day "with relief." (Tr. 381). I therefore find no fault with the ALJ's assignment of "little weight" to Dr. Baum's conclusion that Ms. Mazan's GERD would preclude her from working.

Ms. Mazan further contends that the ALJ should have found her arthritic changes in her cervical spine to be severe at Step Two. Pl. Mot. 28-29. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that her impairment is severe. *Johnson v. Astrue,* No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995)). The ALJ acknowledged that the arthritic changes in her cervical spine presented an impairment, but found it non-severe because an MRI, according to Ms. Mazan, showed only a muscle strain. (Tr. 12, 65-66). Even if the ALJ erred in her evaluation of Ms. Mazan's neck impairments at Step Two, such error would be harmless. Because Ms. Mazan made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and nonsevere, that significantly impacted Ms. Mazan's ability to work. *See* 20 C.F.R. § 404.1523. The ALJ considered Ms. Mazan's physical condition, including the allegations of neck pain set forth in the record from Dr. Park, in her RFC analysis before concluding that Ms. Mazan was capable of work. (Tr. 18-19).

Ms. Mazan's final argument is that the ALJ's hypothetical question to the VE was inadequate. Pl. Mot. 29-30. Ms. Mazan premises that argument on the ALJ's determination of an insufficient RFC assessment and rejection of opinions of treating physicians, and those bases lack merit for the reasons described above. Ms. Mazan also contends that, because the ALJ limited her to sedentary work and because she turned 50 years of age during the pendency of her claim before the Appeals Council, a finding of disability should have been mandated by Medical-Vocational ("Grid") Rule 201.09. Pl. Mot. 29. However, the opinion being reviewed by both the Appeals Council and this Court was issued on April 11, 2012, when Ms. Mazan was 49 years old. The ALJ properly assessed her status as that of a "younger individual age 45-49," (Tr. 19), and considered Grid Rule 201.18, which provided for a finding of "not disabled." (Tr. 20). The subsequent reviewers of the ALJ's opinion did not have responsibility to reconsider the case under a new age category simply because of the passage of time, and Ms. Mazan cites no authority suggesting an obligation to do so. Accordingly, remand is unwarranted.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 22); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 18) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: May 8, 2014                                     /s/
                                            Stephanie A. Gallagher
                                            United States Magistrate Judge